**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES RICE KENDALL and ANN
P. HOCHBERG, as Trustees for The
Thomas E. Proctor Heirs Trust, and
BANK OF AMERICA, N.A., and
JOHN J. SLOCUM, JR., as Trustees for
The Margaret O.F. Proctor Trust,

          Plaintiffs.

    v.

LANCASTER EXPLORATION &
DEVELOPMENT COMPANY, LLC,

          Defendants.

No. 4:17-CV-01117

(Judge Brann)

## MEMORANDUM OPINION

### MAY 23, 2018

Before the Court for disposition are (1) Defendant Lancaster Exploration

and Development Company, LLC's Motion to Dismiss, (2) Defendant SWN

Production Company, LLC's Motion to Dismiss, (3) Defendants Chief Oil & Gas,

LLC, Chief Exploration and Development, LLC, Radler 2000 L.P., Tug Hill

Marcellus, LLC, and Enerplus Resources (USA) Corporation's Motion to Dismiss,

and (4) Plaintiff Trustees of the Thomas E. Proctor Heirs Trust and the Trustees of

the Margaret O.F. Proctor Trust's Motion for Summary Judgment. For the

following reasons, Defendants' Motions to Dismiss will be denied in all respects,

and Plaintiffs' Motion for Summary Judgment will be granted.

- 1 -

# I. BACKGROUND

## A. The Parties

This is an action to quiet title brought pursuant to Pennsylvania state law.[1] The parties to this suit, holding interests in estates spanning Bradford, Cameron, Clearfield, Elk, Jefferson, Lycoming and Sullivan counties, are as follows.[2] The Plaintiffs are trustees for The Thomas E. Proctor Heirs Trust ("PHT") and The Margaret O.F. Proctor Trust ("MPT"). Plaintiffs Charles Rice Kendall, an individual domiciled in Maine, and Ann P. Hochberg, an individual domiciled in Massachusetts, are co-trustees of the PHT.[3] Plaintiffs Bank of America, N.A., a citizen of North Carolina, and John J. Slocum, Jr., an individual domiciled in Rhode Island, are co-trustees of the MPT.[4] Together, the PHT and the MPT are trusts held for the benefit of heirs of Thomas E. Proctor, Sr. and Margaret O.F. Proctor, respectively.[5]

Defendants, named in both the original Complaint and added through intervention pursuant to Federal Rule of Civil Procedure 24, are as follows. Defendant Lancaster Exploration & Development Company, LLC ("Defendant

---

[1] Compl. (ECF No. 1) ¶ 1. This Court retains diversity jurisdiction pursuant to 28 U.S.C. § 1332. Consequently, Pennsylvania substantive law applies. *See e.g. Erie R. Co. v. Tompkins*, 304 U.S. 64, 91–92 (1938).

[2] *Id.*

[3] Compl. (ECF No. 1) ¶¶ 2–4.

[4] *Id.* ¶¶ 5–7.

[5] *Id.* ¶¶ 2, 5.

Lancaster") is a limited liability company with both a principal place of business in the state of Michigan and members residing in Michigan.[6]  It is therefore deemed a citizen of that state.  On August 15, 2017, the Court approved a stipulation of the parties allowing for the intervention of SWN Production Company LLC ("Defendant SWN"), Chief Oil and Gas, LLC, Chief Exploration and Development, LLC, Radler 2000 L.P., Tug Hill Marcellus, LLC, and Enerplus Resources (USA) ("Chief Defendants") as Defendants to this action.[7]  These additional Defendants are the assignees of the Lease Agreement executed between Plaintiffs and Defendant Lancaster.[8]

### B.       The Lease Agreement

Together, the PHT and MPT Trusts (collectively "Proctor Trusts") own 100% of the oil and gas rights to certain properties in Bradford, Cameron, Clearfield, Elk, Jefferson, Lycoming and Sullivan Counties ("subject property").[9]  These properties cover approximately 100, 240 acres.[10]  PHT owns a 93.75 %

---

[6]   *Id.* ¶¶ 8–9.

[7]   ECF No. 17.

[8]   *See generally* ECF Nos. 7 & 11.

[9]   Compl. (ECF No. 1) ¶ 12.

[10]   *Id.*

interest in the subject property and MPT owns a 6.25% interest.[11]  MPT has not assigned its interest to PHT.[12]

On June 17, 2002, PHT entered into an Agreement in which it leased all of its petroleum and natural gas rights in the subject property to Defendant Lancaster for five years.[13]  Thereafter, on February 17, 2005 and June 22, 2005, PHT and Defendant Lancaster executed a Letter Agreement ("2005 Letter Agreement") and Extension of Oil and Gas Lease, ("2005 Extension") respectively, which extended the term of this lease for ten years and modified the royalty to be paid to PHT.[14] This agreement was further amended by a "Second Letter Agreement," on August 5, 2005, to exclude property located outside Pennsylvania.[15]  Together, Plaintiffs aver that the Lease forged in 2002, as modified by Letter Agreement and Extension in 2005, constitutes the whole agreement ("Lease Agreement") between the parties.[16]  Not a party to this suit is the Thomas E. Proctor, Jr. Trust ("TEP Jr. Trust").  Through agreements identical to those between PHT and Defendant Lancaster, TEP Jr. Trust leased all of its petroleum and natural gas rights in Pennsylvania to Defendant Lancaster for an initial period of five and later ten

---

[11]  *Id.* ¶ 13.

[12]  *Id.* ¶ 14.

[13]  *Id.* ¶ 15.

[14]  Compl. (ECF No. 1) ¶¶ 16–17.

[15]  *Id.* ¶ 18.

[16]  *Id.* ¶ 19.

years.[17] TEP Jr. Trust later terminated and its beneficiaries have since transferred or assigned their interests to PHT.[18]

The PHT and TEP Jr. Lease Agreements, as modified above, purport to assign 50% of the royalty to be earned by PHT and TEP Jr., as part of the lessors' 6.25% royalty.[19] The specific provisions of these identical lease agreements state as follows.[20] In the February 17, 2005 Letter Agreement executed between PHT and Defendant Lancaster, Section 3(b) states as follows:

> The Proctor Pennsylvania Property's Lease, as amended by the First Amendment, provides for the industry standard twelve and one-half (12.5%) percent royalty. A "royalty interest" is the economic interest reserved by the mineral estate owner and is typically free of the cost of exploration and development of oil and gas wells. Lessor shall retain fifty percent (50%) of such royalty of Lessor's interest in the Proctor Pennsylvania Property and Lancaster shall be assigned the remaining fifty percent (50%),[21]

This provision, in application, is explained in Section 3(d):

> Example 1 -- Oil and Gas. Lessee subleases to exploration companies X, Y and Z, the parcels A, B, and C, respectively, for cash consideration of $10,000, $30,000 and $20,000, respectively, and also receives an overriding royalty interest of 0%, 4%, and 6%, respectively. Lessor would receive a total cash consideration of $30,000 ($10,000 + $30,000 + $20,000 = $60,000 x 50% = $30,000 and Lessee would also receive a

---

[17]   *Id.* ¶¶ 20–24.

[18]   *Id.* ¶ 25.

[19]   Compl. (ECF No. 1) ¶¶ 26–27.

[20]   The Court may consider documents attached to the Complaint, including the lease agreements at issue, when considering a motion to dismiss. *See McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009).

[21]   *See* ECF No. 1-2.

total cash consideration of $30,000). Lessor would receive its 6.25% royalty interest in parcels A, B and C. Lessee would also receive 6.25% royalty interest in parcels A, B, and C. Lessor would also receive an overriding royalty interest of 0%, 2%, and 3% in parcels A, B and C, respectively. Lessee would also receive an overriding royalty interest of 0%, 2%, and 3% in parcels A, B and C, respectively. The amounts contained in this Example 1 are for illustrative purposes only and are not to be construed as any type of representation or projection.[22]

### C.  Procedural History of the State Litigation

In 2012, based in part on the above royalty provision of 6.25%, state court litigation was commenced in Court of Common Pleas of Lycoming County ("Lycoming County Court").[23]  In that case, Plaintiffs alleged declaratory relief and constructive trust claims against Defendants Lancaster and SWN.[24]  These claims asked the Lycoming County Court to "determine the validity of any writing affecting the rights, status or other legal relations of the parties in this lawsuit, including, but not limited to deeds, leases and assignments," and, more pertinently, enter an order that the PHT Lease, as amended, and the TEP Jr. Lease, as amended,

---

[22]  *Id.*

[23]  When deciding a motion to dismiss, the court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). The docket (available on the website of the Unified Judicial System of Pennsylvania: http://ujsportal.pacourts.us) and documents from the state court proceeding case are public records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008) (taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that the court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").

[24]  ECF No. 10-2.

violate the Guaranteed Minimum Royalty Act [GMRA], and therefore are both considered invalid."[25]  The Lycoming County Court subsequently granted judgment on the pleadings to instant Defendants Lancaster and SWN on these counterclaims, but was later reversed by the Superior Court of Pennsylvania in *Southwestern Energy Prod. Co. v. Forest Resources, LLC* ("*Forest Resources, LLC*").[26]  In that case, the Superior Court (1) found, among other things, that the trial court "erred as a matter of law in concluding on the pleadings in this declaratory judgment action that the PHT/Lancaster Lease Agreement . . . did not violate the GMRA," and (2) remanded the case to that court "[t]o the extent the various motions and preliminary objections raised other grounds not addressed."[27]

On remand, the Lycoming County Court ordered Plaintiffs to join indispensable parties, but then dismissed their claims concerning the GMRA as barred by the statute of limitations.[28]  That court specifically found dismissal to be appropriate because both the lease invalidity claims and the quiet title claims were barred by a four year statute of limitations.[29]  Plaintiffs attempted to appeal this adverse ruling but the interlocutory appeal was quashed by a *per curiam* order of

---

[25]  *Id.*

[26]  83 A.3d 177, 189 (Pa. Super. Ct. 2013).

[27]  *Id.* at 191.

[28]  *See* ECF Nos. 10-1 & 10-2.

[29]  *See* ECF No. 10-3, at 4–8.

the Superior Court of Pennsylvania.[30]  Trial for the remaining claims in this state action is scheduled to commence in May 2018, and continue through June 2018.[31]

### D.  The Filing of a Declaration of Claim of Interest and Commencement of this Federal Litigation

On August 24, 2016, Defendant Lancaster filed a declaration of claim of interest against the subject property with the Sullivan County Recorder of Deeds ("2016 Declaration of Interests").[32]  Defendant Lancaster has since filed similar declarations against the subject property in other counties.[33]  These filings have created a cloud on Plaintiffs' title to the subject property and have prevented them from leasing their interests in same.[34]

Based on these 2016 filings, this action was commenced in this Court by way of Complaint on June 23, 2017.[35]  In this Complaint, Plaintiffs assert a quiet title claim, and seek the following relief:

> (i) That the Court enter an order requiring Lancaster to strike, withdraw or otherwise remove all Lancaster Filings in the chains of title for the Subject Property;
>
> (ii) That the Court enter an order compelling Lancaster to record surrenders of the Leases in the Recorder of Deeds Office for each county;

---

[30]  *See* ECF No. 10-3.

[31]  ECF No. 10-4.

[32]  Compl. (ECF No. 1) ¶ 33.

[33]  *Id.* ¶ 34.

[34]  *Id.* ¶ 35.

[35]  ECF No. 1.

(iii) That the Court enter an order enjoining Lancaster from (i) entering into any additional leases relating to the Subject Property, (ii) filing any documents claiming title or interest in the Subject Property; (iii) receiving, accepting and/or depositing any funds associated with any leases of the Subject Property;

(iv) That the Court enter an order requiring Lancaster to turn over to the Proctor Trusts any and all funds received in connection with any lease of the Subject Property;

(v) That the Court enter an order compelling Lancaster to admit that the Leases are invalid and to cancel or discharge any obligations under the Leases; and

(vi) That the Court grant such other relief as it shall deem just and equitable under the circumstances.[36]

Defendant Lancaster subsequently filed a Motion to Dismiss based on both a lack of jurisdiction and for failure to state a claim upon which relief can be granted.[37] In this motion, Defendant Lancaster argues, in the alternative, that (1) this case should be dismissed under the *Rooker–Feldman* doctrine for lack of subject matter jurisdiction, (2) if jurisdiction is found, this Court should abstain under either the *Brillhart* or *Colorado River* abstention doctrines, or (3) this case should be dismissed on the merits for failure to state a claim upon which relief can be granted.[38] Finally, in the event that all other relief is denied, Defendant Lancaster requests that this Court order Plaintiffs to join indispensable parties or allow them

---

[36] *Id.*

[37] ECF No. 10.

[38] *Id.*

to intervene.[39]  On August 15, 2017, the Court approved a stipulation of the parties

allowing for the intervention of Defendant SWN, Chief Oil and Gas, LLC, Chief

Exploration and Development, LLC, Radler 2000 L.P., Tug Hill Marcellus, LLC,

and Enerplus Resources (USA) as Defendants to this action.[40]  These additional

Defendants later filed motions to dismiss on these bases and the additional grounds

of issue and claim preclusion.[41]  In quick succession thereafter, Plaintiffs filed a

Motion for Summary Judgment, arguing that the Lease Agreement at issue is

invalid under the GMRA, and that this impermissible cloud should therefore be

removed from the title of the subject property.[42]  Following full briefing, and a

temporary stay agreed to by the parties, these motions are now ripe for

disposition.[43]

## II.    LAW

### A.        Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which

relief may be granted,[44] a court assumes the truth of all factual allegations in the

---

[39]  *Id.* This portion of the Motions to Dismiss is **DENIED** as moot given the August 15, 2017, stipulation of the parties allowing for the intervention of Defendant SWN and Chief Defendants. ECF No. 17.

[40]  ECF No. 17.

[41]  ECF Nos. 18 & 19.

[42]  ECF No. 30.

[43]  ECF No. 44.

[44]  Federal Rule of Civil Procedure 12(b)(6).

plaintiff's complaint and draws all inferences in favor of that party;[45] the court does not, however, assume the truth of any of the complaint's legal conclusions.[46] If a complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if they allow the court to infer the defendant's liability – the motion is denied; if they fail to do so, the motion is granted.[47]

## B.        Motion for Summary Judgment Standard

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[49] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[50] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[51]

---

[45]  *Phillips v. Cnty. Of Allegheny*, 616 F.3d 224, 228 (3rd Cir. 2008).

[46]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[47]  *Id.*

[48]  Federal Rule of Civil Procedure 56(a).

[49]  *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[50]  Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[51]  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III. ANALYSIS

### A.        Defendants' Motions to Dismiss

Defendants have moved for the dismissal of this action on numerous grounds both jurisdictional and merits-based. Specifically and as previously noted, Defendants suggest that this Court lacks jurisdiction under the *Rooker–Feldman* doctrine, or in the alternative, should otherwise abstain under either the *Brillhart* or *Colorado River* doctrines. Reaching the merits of Plaintiffs' claim, they also argue for dismissal for failure to state a claim upon which relief can be granted. Having carefully considered the arguments of both parties, I find that this Court has subject matter jurisdiction over this action; I will not abstain under either the *Brillhart* or *Colorado River* doctrines; and I will not dismiss this case as time-barred or subject to *res judicata*. My reasoning follows.

### 1.        Whether this Court Lacks Jurisdiction Over this Action Under the *Rooker-Feldman* Doctrine.[52]

---

[52]   This portion of Defendants' Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1). Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of claims based on a lack of subject matter jurisdiction. A moving party may challenge subject matter jurisdiction by either facially or factually attacking the opposing party's assertion of jurisdiction. *See Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When a party files a motion attacking jurisdiction prior to filing an answer to the complaint or otherwise presenting competing facts, the motion is "by definition, a facial attack." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–*

The *Rooker–Feldman* doctrine prohibits a federal district court from exercising jurisdiction over a later-filed federal action.[53]  This doctrine specifically concerns "cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced" and inviting review and rejection of those judgments.[54]  While the *Rooker–Feldman* doctrine had, since its inception, been expanded by the lower federal courts to preclude any federal claim that was "inextricably intertwined with an issue adjudicated by a state court,"[55] the Supreme Court suppressed this expansive application in *Exxon Mobil* by reiterating the truly "limited circumstances" in which the doctrine acts to bar a federal district court from exercising subject-matter jurisdiction.[56]  The Supreme Court specifically explained that *Rooker–Feldman* is

Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

[53]   *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163–64 (3rd Cir. 2010); *Rooker v. Fidelity Trust, Co.*, 263 U.S. 413, 416 (1923) (holding that no federal court, other than the Supreme Court, may entertain a proceeding to reverse or modify a judgment of a state court); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (holding that federal district court lacked subject-matter jurisdiction to review the decision of a District of Columbia high court determining application of a local rule to the case before it).

[54]   *Lance v. Dennis*, 546 U.S. 456, 460 (2006); *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

[55]   *See e.g., Walker v. Horn*, 385 F.3d 321, 329, 332 (3rd Cir. 2004) (federal claim was barred because granting the relief requested would require the district court to conclude that the state court made an incorrect factual or legal determination); *In re Knapper,* 407 F.3d 573, 580 (3rd Cir. 2005) (if federal relief can only be predicated upon a conviction that the state court was wrong, federal claim is barred).

[56]   *See Exxon Mobil Corp.*, 544 U.S. at 291.

not implicated simply because a party attempts to litigate in federal court a matter previously litigated in state court so long as the federal plaintiff presents some independent claim; albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.[57]

Following the holding of *Exxon Mobil,* the Third Circuit in *Fox Rothschild LLP,* reiterated four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.[58] According to our Court of Appeals, "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim."[59]

In opposing Defendants' motions to dismiss under the *Rooker–Feldman* doctrine, Plaintiffs argue that the instant action does not satisfy its requisites because (1) the Lycoming County Court's August 2016 dismissal of their GMRA-related claims did not render them state court losers, and (2) the injury they sustained was not caused by the state court decision but rather the actions of

---

[57] *Id.* at 293; *Fox Rothschild LLP,* 615 F.3d at 166.

[58] *Fox Rothschild LLP*, 615 F.3d at 166.

[59] *Id.*

Defendant Lancaster.[60]  Because I am in agreement that the injury sustained by Plaintiffs was not caused by the August 2016 dismissal of this GMRA-related state claims, and in fact pre-dated that ruling, this federal suit is necessarily outside the ambit of the *Rooker–Feldman* doctrine.

In *Exxon Mobil,* the Supreme Court emphasized that *Rooker–Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[61]  Here, Plaintiffs specifically complain of injury inflicted by the 2016 Declarations of Interest filed following the Lycoming County Court's dismissal of their GMRA-related claims, and therefore argue that this injury was not caused by this decision.[62]  Defendants counter by arguing that the filing of these Declarations was in fact spurred by that state court decision, and that this action therefore satisfies the requisites of *Rooker–Feldman*.[63]  While I am cognizant of, and will separately address Defendants' essential argument that this action closely parallels and implicates the claims,

---

[60]  *See* ECF No. 26, at 4–8.

[61]  *Exxon Mobil Corp.*, 544 U.S. at 284.

[62]  Compl. (ECF No. 1) ¶¶ 33–35.

[63]  *See, e.g,* ECF No. 29, at 8–10.

issues, and conclusions of the state court, I nevertheless find this connection insufficient to satisfy factors two and four of the *Rooker–Feldman* doctrine.

First, even if the Court were to accept Defendants' averment that the 2016 Declarations of Interest were spurred by the Lycoming County Court's August 2016 dismissal of the GMRA-related claims, this argument does not tell the complete, and complicated, background of this litigation. These 2016 Declarations on Interest, even if cloaked as somehow independent from the previously executed Lease Agreement, stem from the same royalty provision and effect the same injury—cloud on Plaintiffs' title. Therefore, while I accept that the Declarations may have been filed in response to the state court decision, the injury alleged to be created by this cloud was pre-existing given the existence of the yet-to-be-invalidated Lease Agreement. A causal connection can therefore not be made between the ultimate injury and this state court decision.

Second, Defendants' argument that this matter should be dismissed simply because the Court would in the course of this litigation be required to reject the Lycoming County Court's legal conclusions on Plaintiffs GMRA-related claims is similarly unavailing.[64] Here's why. In the *Exxon Mobil* decision, the Supreme Court wrote, on this very point, that "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court

---

[64]  ECF No. 29, at 10.

reaches judgment on the same or related question while the case remains *sub judice* in a federal court."[65]  Rather, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.' "[66]  Here, the Plaintiffs' quiet title claim, based ostensibly on the filing of the 2016 Declarations of Interests, may implicate the negation of a legal conclusion reached by the Lycoming County Court.  Pursuant to the direction of the Supreme Court, however, this issue is more properly analyzed under preclusion principles.

### 2. Whether the Quiet Title Claim is Barred by *Res Judicata*

Having found that this Court's jurisdiction is not barred under the *Rooker–Feldman* doctrine*,* but nevertheless cognizant of Defendants' arguments concerning the common issues presented by these suits, I will now address whether Plaintiffs' quiet title claim is barred by *res judicata*.[67]  Generally, *res judicata* encompasses two preclusion concepts: (1) issue preclusion, a more narrow application of traditional *res judicata* that forecloses litigation of a litigated and decided matter (often referred to as collateral estoppel); and (2) claim preclusion,

---

[65]  *Id.* at 292.

[66]  *Id.* at 292 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

[67]  In the Third Circuit, affirmative defenses may be raised at the motion to dismiss stage if the defenses are "apparent on the face of the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

which disallows litigation of claims that have either been litigated or were never litigated, but which should have been presented in an earlier suit.[68] Common to both of these encompassed doctrines is the requirement that the previous suit culminate in a judgment on the merits.[69] Plaintiffs argue that this element is lacking and both doctrines are therefore inapplicable.[70] I agree.

As noted above, the procedural history of the Lycoming County Court action demonstrates that, following the issue of judgment on the pleadings to Defendants Lancaster and SWN on Plaintiffs' GMRA-related claims, the Superior Court reversed the Lycoming County Court's conclusion that the PHT/Lancaster Lease Agreement did not violate the GMRA, but remanded to the Court to adjudicate on other grounds raised by the various motions and preliminary objections.[71]

---

[68] *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 (1984). Though an affirmative defense, res judicata may be raised by in a motion to dismiss. *Robinson v. Johnson*, 313 F.3d 128, 135 n. 3 (3d Cir.2002) (citing *Williams v. Murdoch*, 330 F.2d 745, 749 (3d Cir. 1964)).

[69] *See Bd. of Trs. of Trucking Emps. of North Jersey Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992)(A party may successfully assert the narrower *res judicata* concept of issue preclusion "when: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted has had a full and fair opportunity to litigate the issue in question."); *Marmon Coal Co. v. Director, Office of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013)(quoting *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010)(For a party to succeed on the affirmative defense of *res judicata,* through the encompassed concept of claim preclusion, three elements must be satisfied: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.").

[70] *See* ECF No. 26, at 19–22.

[71] *Forest Resources, LLC*, 83 A.3d at 191.

On remand, the Lycoming County Court dismissed Plaintiffs' GMRA-related claims as barred because the joinder of necessary parties could not be effectuated without running afoul of the statute of limitations.[72] This dismissal is not, however, a final adjudication on the merits. Indeed, a merits adjudication is one made on substantive law, rather than procedural rules.[73] Dismissal made pursuant to the statute of limitations, as in the state action, is the latter.[74] That ruling therefore has no preclusive effect here.

> **3.** **Whether this Court Should Abstain from Exercising Jurisdiction Over this Action Under the *Brillhart* or *Colorado River* Abstention Doctrines.**

Coloring this dispute is the substantial overlap between the claims and issues of this federal action and those in dispute in the Lycoming County Court action. Based on this overlap, Defendants argue that, if this Court were to determine that the *Rooker–Feldman* doctrine and preclusion principles were inapplicable, it should nevertheless abstain from exercising its jurisdiction over this matter under either the *Brillhart* or *Colorado River* abstention doctrines.[75] I will examine the applicability of these doctrines below.

### a. *Brillhart* Abstention

---

[72] *See* ECF Nos. 10-1 & 10-2.

[73] *Brown v. Cooney*, 442 A.2d 324, 326 (Pa.Super.Ct. 1982).

[74] *Westinghouse Elec. Corp./CBS v. W.C.A.B. (Korach)*, 584 A.2d 579, 588 n. 11 (Pa. 2005).

[75] *See* ECF No. 15, at 11-16; ECF No. 22, at 9-12; ECF No. 23, at 14-18.

Defendants first argue that, because the relief sought by Plaintiffs is essentially declaratory in nature, this Court should abstain from exercising jurisdiction pursuant to the discretion first enunciated by the Supreme Court in *Brillhart v. Excess Ins. Co. of America*,[76] and reiterated in *Wilton v. Seven Falls Co.*[77][78] Under this discretion, a federal court may decline to exercise jurisdiction properly afforded under the Declaratory Judgment Act[79] when an action seeks declaratory relief.[80] This discretion to decline jurisdiction is guided by the factors outlined by the Third Circuit in *Reifer v. Westport Insurance Corporation.*[81] While cabined, this discretion also exists when both declaratory and legal relief are sought.[82]

Here, Defendants argue that, while styled as a quiet title claim, the relief sought is declaratory in nature and this Court should therefore abstain from

---

[76] 316 U.S. 491, 495 (1942).

[77] 515 U.S. 277, 283 (1995).

[78] *See* ECF No. 15, at 11–14; ECF No. 22, at 9–11; ECF No. 23, at 14–15.

[79] 28 U.S.C. § 2201(a).

[80] *Rarick v. Federated Service Insurance Co.*, 852 F.3d 223, 227 (3d Cir. 2017).

[81] 751 F.3d 129, 146 (3d Cir. 2014). Those factors include: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. *Id.*

[82] *Rarick*, 852 F.3d at 227–28.

exercising jurisdiction pursuant to *Brillhart*. In my view, *Brillhart* and its progeny are inapposite to the instant scenario. Indeed, examination of the analytical basis of *Brillhart* abstention reveals that it is derived from the permissive language of the Declaratory Judgment Act and therefore applies only when this jurisdiction is premised on this federal act.[83] Therefore, although I recognize Defendants' argument that Plaintiff's legal claim essentially requests declaratory relief, the absence of an actual claim under the Declaratory Judgment Act is dispositive on this issue. Abstention under *Brillhart* is therefore inapplicable.

### b. *Colorado River* Abstention

Defendants next argue that abstention is appropriate under the *Colorado River* doctrine because the action within the Lycoming County Court and this federal action are parallel proceedings which demonstrate "extraordinary circumstances" justifying abstention.[84] I disagree.

Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them."[85] The *Colorado River* doctrine, however, permits courts to abstain from exercising jurisdiction by staying or dismissing a pending federal action in favor of a parallel state court proceeding.[86] This abstention is based on

---

[83] *Brillhart*, 316 U.S. at 494–95.

[84] *See* ECF No. 15, at 14–16; ECF No. 22, at 11–12; ECF No. 23, at 15–18.

[85] *Baykeeper v. NL Industries, Inc.*, 660 F.3d 686 (3d Cir. 2011)(citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

[86] *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009).

"principles of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' "[87] Pursuant to a directive by the Supreme Court, lower federal courts must however apply this doctrine cautiously and be mindful that abstention is an "extraordinary and narrow exception."[88] The abstention analysis comprises a two-part inquiry: the court must decide first whether the actions are indeed "parallel" and, second, whether the matters present the "extraordinary circumstances" contemplated by *Colorado River* and its progeny.[89]

As noted, the first step in determining whether *Colorado River* abstention is appropriate is to determine if there exists a parallel state court proceeding.[90] Generally, proceedings are "parallel" when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues."[91] In reaching this issue, the Third Circuit has noted that "it is important . . . that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate."[92] Defendants argue that

---

[87] *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir.2011) (quoting *Trent v. Dial Medical*, 33 F.3d 217, 223 (3d Cir.1994)).

[88] *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

[89] *See Nationwide*, 571 F.3d at 307 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983)).

[90] *Yang v. Tsui*, 416 F.3d 199, 205 n. 5 (3d Cir. 2005) (citation omitted).

[91] *Id.*

[92] *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980).

this action and the state proceeding are parallel because the parties are the same in both actions and the state action involved a now dismissed quiet title claim.[93] Plaintiffs, in turn, respond that the ongoing state court proceeding is not parallel because it no longer addresses their GMRA-related claim.[94] This argument, presumably premised on the Lycoming County Court's August 2016 dismissal of GMRA-related claims, ignores the potential that this dismissal may be revisited and potentially reversed on appeal. The current absence of this issue in the state proceeding therefore is not sufficient so as to find that it is also not a parallel proceeding under *Colorado River*.

Once proceedings are deemed to be parallel, a court shall then consider "whether 'extraordinary circumstances' meriting abstention are present."[95] This determination requires consideration of the following factors:

(1) Which court first assumed jurisdiction over property involved, if any;

(2) Whether the federal forum is inconvenient;

(3) The desirability of avoiding piecemeal litigation;

(4) The order in which the respective courts obtained jurisdiction;

(5) Whether federal or state law applies; and

---

[93] *See* ECF No.23, at 17.

[94] ECF No. 26, at 16.

[95] *Nationwide*, 571 F.3d at 308 (citing *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)).

(6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.[96]

None of these factors are determinative; rather, they require "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[97]

Here, the first three *Colorado River* factors are neutral. The Third Circuit has described the first factor as whether either court has obtained jurisdiction over property in the matter.[98] Here, neither the state nor the instant proceeding is *in rem* and the Court therefore finds this factor to be neutral. The second factor refers to the federal forum's geographic location in relation to the state court location.[99] Given the close proximity of the federal courthouse in this division of the District Court to the Lycoming County Courthouse, this factor in the *Colorado River* analysis is similarly neutral. The third factor—the desirability of avoiding piecemeal litigation— weighs against abstention in this matter, as well. In assessing this factor, a court must examine whether a statute, regulation, or authority at issue evinces a policy of avoiding piecemeal litigation in this

---

[96] *Trent v. Dial Medical*, 33 F.3d 217, 225 (3d Cir. 1994) (citing *Moses H. Cone*, 460 U.S. at 15–16).

[97] *Moses H. Cone*, 460 U.S. at 16.

[98] *Ingersoll-Rand Financial Corp. v. Callison*, 844 F.2d 133, 136 (3d Cir. 1988); *see also Ryan v. Johnson*, 115 F.3d 193, 196 n. 1 (3d Cir. 1997)(describing element as whether either court has assumed in rem jurisdiction over property).

[99] *See Morgan Stanley Dean Witter Reynolds v. Gekas*, 309 F.Supp.2d 652, 657 (M.D.Pa.2004) (citing *Colorado River*, 424 U.S. at 820).

context.[100]   Here, the parties are essentially in agreement that no such policy

exists.[101]

Factor four —the order in which the respective courts obtained

jurisdiction— weighs in favor of abstention.  In reaching this determination, I note

that the Third Circuit has cautioned that we must consider not only "which action

was filed first," but also "[t]he comparative progress made in the state cases and

this one also needs to be considered."[102]  Here, litigation has been pending in the

Lycoming County Court since 2011.  That litigation has encompassed an appeal to

the Superior Court, and now includes a planned trial from May 2018 through June

2018.  By contrast, litigation in this Court commenced in 2017, and this instant

Memorandum Opinion is this Court's first foray into the merits of this action.  The

nascent procedural posture of this litigation, as compared to the state proceeding,

augurs in favor of abstention.

The fifth element—whether federal or state law applies—is neutral.  Indeed,

while state law unquestionably controls here, abstention cannot be justified on that

fact alone.[103]  I specifically note that, while the presence of federal issues often

weighs against abstention, federal jurisdiction here is invoked under the diversity

---

[100]  *Nationwide Fire Ins.*, 571 F.3d at 308 (citing *Spring City Corp. v. American Bldgs. Co.,*193
         F.3d 165, 172 (3d Cir. 1999)).

[101]  *See* ECF No. 26, at 17; ECF No. 29, at 15.

[102]  *Moses H. Cone*, 460 U.S. at 22.

[103]  *Id.* at 26.

statute which requires federal courts to routinely interpret issues entirely within the realm of state law. Therefore, this factor, based on properly pled diversity jurisdiction, is neutral. Finally, the sixth factor—whether the state court proceeding would adequately protect the federal plaintiff's rights—actually weighs against abstention. Here, the Lycoming County Court dismissed Plaintiff's GMRA-related claims on procedural grounds. The action in this Court is therefore necessary to protect Plaintiffs' interests and reach a decision on the merits of these claims. In sum, on balance, and upon consideration of the above *Colorado River* factors, I find that "exceptional circumstances" are not presented by this litigation.[104] Abstention in deference to the state court proceeding is therefore not warranted.

### 4. Whether Plaintiffs' Quiet Title Claim is Time Barred.

Finally, Defendants move to dismiss Plaintiffs' claim as barred because they argue that it accrued in 2005—a date which places it well beyond both Pennsylvania's four-year statute of limitations for breach of contract actions and a six-year catchall statute of limitations.[105] Plaintiffs respond that dismissal is

---

[104] *Moses H. Cohen*, 460 U.S. at 25–26 ("[T]he task is to ascertain whether there exists 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction.").

[105] *See* ECF No. 15, at 16–18; ECF No. 22, at 12–15; ECF No. 23, at 18–20.

inappropriate because this action, styled as a quiet title claim, by its nature evades any time bar.[106] Plaintiffs are correct.

First, I note that Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint.[107] A court may nevertheless dismiss a complaint as time-barred under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."[108] This so-called "Third Circuit Rule" is however only appropriate "where, on the face of the complaint, a court can determine that the claims contained in it are untimely."[109]

In the matter at hand, Plaintiffs' Complaint asserts a quiet title claim under Pennsylvania law. As such, Defendants' arguments concerning the applicability of a four year and six year statute of limitations are therefore inapposite. Under Pennsylvania law, an action to quiet title cannot be subject to a statute of limitations. Indeed, in *Kean v. Forman*, the Pennsylvania Superior Court, addressing a quiet title claim brought to remove a mortgage on the plaintiff's property, held that actions to quiet title "cannot be subject to a statute of

---

[106] *See* ECF No. 26, at 18–19.

[107] Fed. R. Civ. P. 8(c).

[108] *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); *see Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

[109] *Byrne v. Cleveland Clinic*, 684 F.Supp.2d 641, 658 n. 17 (E.D.Pa. 2010) (citing *Zankel v. Temple Univ.*, 245 Fed. Appx. 196, 198 (3d Cir.2007)).

limitations, since the possessor's interest in the property is clouded by the questioned mortgage each day that it remains."[110] Such is the case in this action. The Lease Agreement and related Declarations of Interest here, alleged to be invalid clouds concerning the royalty obligations between the parties, remain an encumbrance on the property each day they remain undisturbed.

Moreover, I note that the stated basis for this quiet title action, and the remedies sought by Plaintiffs through this action, specifically concern the 2016 Declaration of Interests filed by Defendants.[111] While I am cognizant of the related nature of these filings to the Lease Agreement (executed in 2005) and implications that an adverse finding by this Court would have on its validity, I nevertheless find that these filings constitute a new cloud on Plaintiffs' title which would, in any event, bring this action well into the four and six year limitations periods advanced by Defendants.[112] Defendants' arguments on this point are therefore dispelled, and their motion is denied.

### B.        Plaintiffs' Motion for Summary Judgment[113]

---

[110] 752 A.2d 906, 908 (Pa. Super. Ct. 2010); *Appel v. Kaufman*, 728 F.Supp.2d 684, 699 (E.D.Pa. 2010).

[111] Compl. (ECF No. 1) ¶¶ 33–35.

[112] *See* ECF No. 15, at 16–18; ECF No. 22, at 13–15; ECF No. 23, at 18–20.

[113] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D.Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in

Given the inherently legal nature of this action and the undisputed material record, Plaintiffs have also filed a Motion for Summary Judgment.[114] In this motion, Plaintiffs argue that summary judgment is appropriate as a matter of law because (1) no material facts remain in dispute, and (2) the Lease Agreement on its face violates the GMRA and must be removed from the title of the subject property.[115] Defendants in turn oppose the entry of summary judgment by arguing that (1) this claim remains time-barred,[116] (2) the Superior Court's decision in *Forest Resources, LLC* is non-binding and, in any event, is a misapplication of Pennsylvania contract law, and (3) disputed material facts preclude summary judgment on this issue.[117] Having reviewed the undisputed factual record of this case,[118] I find that Plaintiffs are entitled to judgment as a matter of law.

---

the moving party's statement and identifying genuine issues for trial. *See id.* Here, the parties have faithfully complied with this rule. The Court need not compile a separate background based on this material as the issue presented by Plaintiffs' Motion for Summary Judgment is purely legal.

[114] *See* ECF No. 30.

[115] *See* ECF No. 31.

[116] As noted immediately above, this argument is without merit and will not be re-addressed here. *See* Section III.A.4.

[117] *See* ECF No. 42.

[118] I reject Defendants' argument that summary judgment is inappropriate because discovery is needed concerning the intent of the parties. Introduction of this parol evidence, however, necessarily requires a finding that the Lease Agreement was ambiguous and non-integrated. As will be explained below, and as found by the Pennsylvania Superior Court in Forest Resources, LLC, the Lease Agreement, as one document, is neither. *See LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (2009)("When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning." (citations omitted)).

First, Defendants argue within their brief in opposition that *Forest Resources, LLC* is not binding because, while it reversed the issuance of judgment on the pleadings, the Superior Court thereafter remanded the case for consideration of other defenses raised, but not fully addressed, by the state trial court.[119] Regardless of whether this case is binding, however, its analysis and conclusions, wholly dispositive of the instant matter, are soundly reached and will be adopted here. I note, for instance, that Defendants' oppose summary judgment on the ground that *Forest Resources, LLC* incorrectly found the 2002 Lease and subsequent Letter Agreements to be treated as a single agreement.[120] In *Camp Ne'er Too Late, LP v. Swepi, LP* ("*Camp Ne'er Too Late*"), I opined on the applicability of *Forest Resources, LLC* and specifically summarized this case as follows:

> Specifically, <u>Southwestern Energy</u> involved a dispute between an initial oil and gas lease and two subsequent letter agreements that explicitly amended certain terms of the original lease. In Southwestern Energy, the Honorable Sallie Updyke Mundy of the Superior Court of Pennsylvania made clear that "by their own terms," the agreements at issue "reference and incorporate each other with the clear intent they should be interpreted as a single agreement." Quite opposite from the facts at hand, one of the two subsequent lease amendments in Southwestern Energy even "identifie[d] itself as an amendment of the [prior] [a]greement, not an independent collateral agreement."[121]

---

[119]  *See* ECF No. 42, at 6–7.

[120]  *Id.* at 8–13.

[121]  185 F.Supp.3d 517, 547 (M.D.Pa. 2016)(citations omitted).

Defendants attempt, however, to argue that *Forest Resources, LLC* is an incorrect statement of law and cite the *Camp Ne'er Too Late* to support a contrary analytical approach.  First, to the extent that Defendants offer *Camp Ne'er Too Late* as an opinion critical of the *Forest Resources, LLC* holding, I note that my analysis in that case simply served to distinguish *Forest Resources, LLC* from the presented facts.[122]  It did not criticize the Superior Court's correct recitation and application of state contract law.[123]  Nor could it given the wide acceptance which Pennsylvania courts have afforded its holding.[124]

Moreover, *Forest Resources, LLC*, in this Court's view, correctly decided the issues presented here.  First, the Superior Court found that:

> [B]ased on a plain reading of the documents themselves, that the recorded 2002 Lease, the 2002 Letter Agreement as amended by the 2005 Letter Agreement, and the 2005 Lease Extension must be construed together to interpret the terms of the lease agreement between PHT and Lancaster.[125]

The Court in *Forest Resources, LLC* based this finding in part on the opening lines of the 2005 Letter Agreement, which provides that it "amends and restates the agreement" between the Plaintiffs and Defendant Lancaster.[126]  This Letter Agreement thereafter incorporated the 2002 Lease by reference, and provides a

---

[122]  *Id.*

[123]  *Id.*

[124]  *See* ECF No. 48, at 6–7 (collecting cases).

[125]  *Forest Resources, LLC*, 83 A.3d at 189.

[126]  *See* ECF No. 32-4, at 1.

complete discussion of the consideration to be provided for the entire transaction—

the reduction of the royalty interest to 6.25% by way of "assignment back"

mechanism.[127] As noted by Plaintiffs, and confirmed by the inspection of this

Court, this 2005 Letter Agreement concludes by stating that it represents "the full

and complete understanding between the Lessor and Lessee."[128] Based on these

averments, I am in agreement with the Superior Court that the 2002 Lease, 2002

Letter Agreement, 2005 Letter Agreement, and 2005 Lease Extension are properly

interpreted as one agreement.

Furthermore, I find that *Forest Resources, LLC* is correct in finding that this

Lease Agreement, interpreted as one document, is in violation of the GMRA.  The

applicable language of this particular statute reads:

> A lease or other such agreement conveying the right to remove or
> recover oil, natural gas or gas of any other designation from lessor to
> lessee **shall not be valid if such lease does not guarantee the lessor
> at least one-eighth royalty** of all oil, natural gas or gas of other
> designations removed or recovered from the subject real property.[129]

Here, the 2005 Letter Agreement, which reduces the royalty provision from 12.5%,

or a 1/8th share, to 6.25%, of a 1/16th share, runs afoul of this provision.  Indeed,

like the Superior Court in *Forest Resources, LLC*, I find that plain language of the

---

[127]  *Id.* at ¶¶ 1, 3.

[128]  *Id.* at ¶ 5.

[129]  58 P.S. § 33 (emphasis added).

GMRA compels this result.[130]  As included above, this language dictates that a document "shall not be valid" if it does not guarantee the lessor a 1/8[th] royalty. While masked as a 50% assignment back to Defendants of  the previously ordained 1/8[th] royalty, this mechanism, as created by the 2005 Letter Agreement modifying the terms of the Lease Agreement, clearly violates this directive.  Argument to the contrary by Defendants is in contravention of the GMRA's clear mandate and is unpersuasive.[131]  Furthermore, I am in agreement with Plaintiffs and the Superior Court that to accept this practice in this and all future leases would allow complete circumvention of the statute and effectively render it without consequence.[132]

For these reasons, I find that *Forest Resources, LLC*, even if not binding on this Court, is highly persuasive and its reasoning and holding will be adopted *in*

---

[130] *See Kilmer v. Elexco Land Servs.*, 990 A.2d 1147, 1156 (Pa. 2010)("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.")(quoting 1 Pa.C.S. § 1921(b)).

[131] See ECF No. 42, at 13–17.  Indeed, this Court finds unpersuasive Defendants' arguments that (1) the sophistication of the parties somehow justifies this result, and (2) that the assignment back provision was somehow an allowable assignment of Plaintiffs' royalty provision in the lease.  Concerning the latter argument, while Plaintiffs are correct that the Superior Court noted that the GMRA does not prevent a lessor from assigning its royalties, the Superior Court nevertheless wrote that such an assignment must be "independent of the lease or conveying agreement." *Forest Resources, LLC*, 83 A.3d at 190-91.  Given this Court's finding that the violative assignment back provision was part and part of one conveyance agreement, this argument is unpersuasive.

[132] *See* ECF No. 48, at 11 (citing *Commw. v. Diodoro*, 970 A.2d 1100, 1107 (Pa. 2009)).

*toto*.  Plaintiffs are therefore entitled to summary judgment on their quiet title claim as the Lease Agreement at issue is invalid.[133]

## IV.    CONCLUSION

Based on the above reasoning, I find that Defendants Lancaster Exploration and Development Company, LLC, SWN Production Company, LLC, and Chief Oil & Gas, LLC, Chief Exploration and Development, LLC, Radler 2000 L.P., Tug Hill Marcellus, LLC, and Enerplus Resources (USA) Corporations' Motions to Dismiss will be denied in all respects.

Furthermore, because I find that no genuine dispute of material fact remains as to the validity of the Lease Agreement at issue in this case, Plaintiffs' Motion for Summary Judgment will be granted as a matter of law.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[133] *See Fitzpatrick v. Shay*, 461 A.2d 243, 247 (Pa. Super. Ct. 1983)("An agreement that cannot be performed without violating a statute is illegal and will not be enforced.").